## Case No. 16,259.

### UNITED STATES v. SEVENTY-EIGHT CASKS OF WHITE WINE.

[9 Int. Rev. Rec. 105.]

District Court, D. Louisiana. March, 1869.

VIOLATIONS OF CUSTOMS LAWS — FORM OF OATH — FALSE DESCRIPTION — FORFEITURES.

1. Where a party in making an entry of imported wines took the oath prescribed by the act of March 1, 1823 [3 Stat. 729], not so modified as to conform to the provisions of the act of March 3, 1863 [12 Stat. 737], *held*, that it was not the requisite oath, but that the entry or attempt at entry was in violation of the said act of 1863, and worked a forfeiture of the goods.

2. A false description in the invoice of the goods so sought to be entered, subjects the same to forfeiture.

[This was an information against seventy-eight casks of white wine, forty half casks of red wine, and five hundred cases of red wine, on the ground that the same were imported in violation of the customs laws.]

DURELL, District Judge. The libel of information in this case is framed under the act of March 3, 1863 (12 Stat. 737). That act changed the method in which importation should be made, both as to the forms to be observed abroad and the forms to be observed at the port of entry. The importance of that change is shown by an examination of the acts touching importations, passed prior to the statute of 1863.

Under the acts of 1818 and 1823 (3 Stat. 435, 733), all invoices of goods imported into this country by persons residing out of the United States were required to be verified, by oath before a consul or other officer of the United States residing abroad. By the act of 1862 (12 Stat. 558), all invoices, whether by persons residing in the United States, or otherwise, were required to be verified, by oath, before the consul or commercial agent of the United States, in the district where the goods are manufactured, or from which they are sent; and if there be no consul or commercial agent of the United States, in the said district, the verification shall be made by the consul or commercial agent of the United States at the nearest point, or at the port from which the goods are shipped; in which case the oath shall be administered by some public officer duly authorised to administer oaths, and transmitted, with a copy

of the invoice, to the consul or commercial agent for his authentication. The act of 1863 changed the entire system with regard to invoices. The verification abroad, by oath, was dispensed with, and it provided that the owner should present to the nearest consul of our government invoices in triplicate, giving the cost, or actual market value of the merchandise sought to be imported; and that these invoices should have thereon endorsed a declaration that "they were in all respects true," and that they contain a true statement of the actual cost or market value of said merchandise at the time when, and at the place where, the same was purchased, or produced. It further requires that if any owner, etc., shall knowingly make, or attempt to make an entry of merchandise by means of any false invoice, or by means of any other false or fraudulent practice or appliance whatever, the said merchandise shall be forfeited. The act also requires that the form of the oaths required by the act of 1823 shall be so modified as to conform to the provisions of the act of 1863.

This statute appears to me to have been most ably devised to secure true and complete information as to all importations, thus to enable the officers of customs to collect the just revenues of the government; and it is the duty of the court to apply it firmly and strictly in aid of so important an object of legislation. The violations of the statute charged in the libel, and which it will be necessary for me to consider, are three; first —the entry of the wines made by Piaggio without taking the requisite oath; second— an entry made knowingly with an invoice and declaration containing false and fraudulent undervaluations; and third—an entry made knowingly with an invoice and declaration containing false and fraudulent statements touching the character of the merchandise imported.

First, as to the entry made by Piaggio, without taking the requisite oath. Piaggio took the oath prescribed by the act of 1823, and not the oath prescribed by the act of 1823, so modified as to conform to the provisions of the act of 1863. Without such conformity, the invoice or entry made would, in some important particulars, have no verification other than the declaration signed abroad. The taking of the oath prescribed by the act of 1823, not so modified as to conform to the provisions of the act of 1863, was an entry, or an attempt to make an entry by means of a "fraudulent document or paper," or by means of a "false or fraudulent practice or appliance" under the statute, and is punished with a forfeiture of the goods so entered, or attempted to be entered.

Second, as to the undervaluation. The value invoiced was five francs the case. The weight of testimony shows that the actual value of the red wines was eight and one-half francs the case. The cost of box, bottles, corks, capsules, labels, and other requisites

of preparation for shipment is shown to be four francs sixteen centimes the case; leaving, according to the invoice valuation, but eighty-four centimes, or about sixteen cents, as the value of the contents of the twelve bottles; being one and one-third of a cent per bottle. I cannot come to the conclusion that such a valuation carries with it the truth. The invoices of subsequent importations, introduced on the part of the government, and wherein wine of the same quality, as that libelled in this case, is valued as high as seven and a half francs, while the testimony shows little or no intermediate variation in price, weigh heavily with the court. Therefore, after a full review and careful consideration of the evidence adduced on both sides, I am satisfied that the undervaluation is made out.

Third, as to the false and fraudulent statements touching the character of the merchandise imported. That the wine was falsely described in the invoice is admitted, nay, urged by the claimant. This admission is conclusive against him; for the invoice is not "in all respects true," and the false description or naming of the wine, was a "false, fraudulent practice," under the statute [U. S. v. One Hundred and Twenty-Five Baskets of Champagne] 3 Wall. [70 U. S.] 560, 564. Moreover, the act of June 30, 1864 [13 Stat. 202], subjects imitations to the highest rate of duty imposed upon the "article imitated." This wine, the red wine, is labeled "Blaye Superieur," and is so called in the invoice. If it is "Blaye Superieur," then it should have paid duty at the rate of eighteen francs the case, such having been shown to be the value of the best qualities of "Blaye." If it is an imitation, then again it should have paid a duty at the rate of eighteen francs the case, that being the value of the wine imitated; thus in either case there was a palpable fraud upon the revenue attempted.

I find as the facts of the case that the allegations contained in the first article of the original libel of information, and in the first, second and third articles of the amended libel of information have been proved. My judgment, therefore, is that the property libeled in this suit be condemned and forfeited to the government of the United States.